**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNY ASERCION, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, a Delaware Corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:26-cv-02442-RFL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><u>Hearing</u><br>Hearing Date: July 14, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 15 – 18th Floor<br><br>Hon. Rita F. Lin |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. ARGUMENT ........ 2

A. Plaintiff Plausibly States a CIPA Section 631(a) Claim ........ 2

1. The Complaint plausibly alleges interception of contents, not merely routine routing information. ........ 2

2. The Complaint plausibly alleges contemporaneous interception. ........ 5

3. The Complaint plausibly alleges third-party interception and aiding-and-abetting liability. ........ 5

4. Plaintiff sufficiently pleads Defendant's failure to obtain consent or a court order prior to the interception and disclosure of the communications. ........ 6

B. Plaintiff Plausibly States a CIPA Section 638.51(a) Pen Register Claim. ........ 8

1. Plaintiff alleges devices and processes that recorded routing, addressing, and signaling information. ........ 8

2. Section 638.51 is not categorically limited to telephone technology. ........ 9

3. Plaintiff sufficiently alleges the requisite intent. ........ 9

C. Plaintiff Plausibly States a Federal Wiretap Act Claim. ........ 10

D. Plaintiff Plausibly States a CDAFA Claim. ........ 11

E. Plaintiff Plausibly States a California Constitutional Privacy and Intrusion Claim. ........ 12

1. Plaintiff alleges a legally protected privacy interest. ........ 12

2. Plaintiff alleges a reasonable expectation of privacy. ........ 12

3. Plaintiff alleges a serious and highly offensive intrusion. ........ 13

F. Plaintiff Plausibly States a UCL Claim. ........ 14

1. Plaintiff pleads economic injury and loss of property. ........ 14

2. The unlawful prong survives because the predicate claims survive. ........ 14

3. The unfair and fraudulent prongs are independently pleaded. ........ 14

4. *Sonner* does not bar Plaintiff's UCL claim. ........ 15

IV. LEAVE TO AMEND SHOULD BE GRANTED IF ANY CLAIM IS FOUND DEFICIENT ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Ambriz v. Google, LLC*, 2025 WL 830450, at *2–3 (N.D. Cal. Feb. 10, 2025) ............ 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ............ 2

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ............ 2

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072–76 (N.D. Cal. 2023) ............ 7

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ............ 2

Federal Rule of Civil Procedure 8(d)(3) ............ 9

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) ............ 8

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994) ............ 12

*In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020) ............ 11, 12, 14

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–08 (9th Cir. 2014) ............ 4

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) ............ 8

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022) ............ 4, 7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018) ............ 3

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323–24 (2011) ............ 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ............ 2

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225, (9th Cir. June 20, 2025) ............ 4

*Nelson v. Reddit, Inc.*, 2026 WL 445627 (S.D. Cal. Feb. 17, 2026) ............ 9

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54 (N.D. Cal. 2014) ............ 11

*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *3–4 (N.D. Cal. Oct. 17, 2025) ............ 2

*Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ............ 9

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) ............ 9

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) ............ 2, 6, 11

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002, at *3–5 (N.D. Cal. Aug. 4, 2025) ("Smith II") ............ 2

*Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) ........ 2

**Statutes**

18 U.S.C. § 2510(8) ........ 10

Cal. Penal Code § 502(b)(1) ........ 11

Cal. Penal Code § 502(c) ........ 11

Federal Rule of Civil Procedure 8(d)(2) ........ 9

## I. INTRODUCTION

This case concerns Ulta's interception and disclosure of Plaintiff's private browsing, product-interest, purchase-intent, and personal-care information on its beauty retail website. Plaintiff alleges that Ulta deployed tracking technologies before legally effective notice or consent, identified his device and browser, monitored his interactions, and transmitted that activity to third-party advertising, analytics, social media, and tracking vendors. These fact and technology intensive allegations cannot be resolved on a Rule 12(c) motion.

The Complaint is not speculative. It alleges a detailed tracking architecture, including 201 third-party trackers, 73 cookies, 25 canvas-fingerprinting instances, two session recorders, Meta/Facebook Pixel events, keylogging, persistent identifiers, IP-address collection, device and browser data, URLs, page views, browsing patterns, product interests, clicks, scrolling behavior, keyboard input, and session-replay data. Compl. ¶¶ 2, 46–64, 68–79, 86–99, 116–123. It further identifies major third-party recipients, including Meta/Facebook, Google/DoubleClick, Tealium, Akamai, Quantum Metric, Medallia, Pinterest, Microsoft, The Trade Desk, TikTok, Criteo, Snapchat, OpenX, PubMatic, and Rubicon. Ulta's Privacy Policy reinforces Plaintiff's theory by acknowledging collection of browsing/search history, products considered, device data, persistent identifiers, geolocation, inferences, session-replay information, analytics data, third-party pixels and cookies, and the "sale" and "sharing" of personal information through third-party tools.

Ulta asks the Court to recast this alleged surveillance as "ordinary website technologies" and resolve disputed factual issues at the pleading stage, including what data was captured, whether it revealed the contents or meaning of Plaintiff's communications, whether interception occurred in transit, whether vendors acted as independent interceptors or service providers, whether the data was used commercially, whether consent existed before tracking began, and whether the tracker stack violated privacy and consumer-protection laws. Rule 12(c) does not permit that result. The Complaint plausibly alleges unlawful tracking and disclosure. The motion should be denied.

## II. LEGAL STANDARD

A Rule 12(c) motion is evaluated under the same standard as Rule 12(b)(6): the Court accepts all well-pleaded allegations as true, construes them in the nonmovant's favor, and grants judgment

only if the movant is entitled to judgment as a matter of law. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The complaint need not prove the case or plead detailed evidence; it need only allege enough factual matter, taken as true, to state a plausible claim and give fair notice of the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Plausibility is not probability, and where Plaintiff's theory is plausible, dismissal is improper even if Ulta offers another possible explanation. *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). Thus, disputed issues of tracking timing, consent, technical operation, third-party participation, commercial use, and the meaning of captured data cannot be resolved on the pleadings; the evidentiary trail is for discovery.

Rule 12(c) is especially ill-suited for resolving web-tracking claims where the issues turn on script timing, browser-to-vendor transmissions, payload contents, tag-manager configuration, vendor data rights, and consent-flow design. This Court has recently treated materially similar allegations as plausible at the pleading stage, including allegations that embedded third-party code caused browsers to transmit full URLs, search queries, product/item-level activity, identifiers, and event data to ad-tech vendors for commercial use. See *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *3–4 (N.D. Cal. Oct. 17, 2025); *Smith v. Rack Room Shoes*, Inc., No. 24-cv-06709-RFL, 2025 WL 1085169, at *1–5 (N.D. Cal. Apr. 4, 2025) ("Smith I"); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002, at *3–5 (N.D. Cal. Aug. 4, 2025) ("Smith II").

## III. ARGUMENT

### A. Plaintiff Plausibly States a CIPA Section 631(a) Claim

#### 1. The Complaint plausibly alleges interception of contents, not merely routine routing information.

Ulta argues that Plaintiff alleges that only IP addresses, browser data, and ordinary page views were captured by the trackers on the Website. That argument misrepresents the Complaint

and draws inferences against Plaintiff. CIPA Section 631(a) applies to internet communications. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022). "Contents" means information concerning the substance, purport, or meaning of a communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–08 (9th Cir. 2014). The question is not whether each isolated data element is content in the abstract, but whether the captured information reveals substance or meaning in context.

Here, Plaintiff alleges far more than IP addresses or browser type. The Complaint outlines an extensive list of data captured by the trackers on the Website, including URLs, page views, content views, product views, product interests, purchase-intent signals, browsing patterns, cursor movements, clicks, scrolling, keyboard input, and complete session-replay information. Compl. ¶¶ 46–64, 78–79, 86, 90–99, 120. Ulta allegedly deployed session recorders visually capturing the entire session, including cursor movements, clicks, scrolling behavior, and keyboard input. Compl. ¶¶ 48–50. Ulta's "record information" argument fails because Plaintiff does not rely merely on IP addresses, browser type, or device metadata. In the website context, full URLs, product-detail paths, search strings, product names/SKUs or item parameters, content view events, add to cart or other purchase intent events, and session-replay payloads reveal what Plaintiff sought, considered, selected, typed, abandoned, or intended to buy.  That is the substance and meaning of the communication in context. See *Selby*, 2025 WL 2950164, at *3; *Smith I*, 2025 WL 1085169, at *4; *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020).

Data constitutes the "contents" of communications when they "provide significant information regarding the user's browsing history and divulge a user's personal interests, queries, and habits…" *Yoon v. Meta Platforms, Inc*. (N.D. Cal. Dec. 30, 2024) 2024 WL 5264041, at *5)(internal quotations omitted. For this reason, in *In re Meta Pixel Healthcare Litig.* (N.D. Cal. 2022) 647 F. Supp. 3d 778, 795, the court rejected the defendant's argument that the names of the buttons clicked on a website were not "content" for purposes of the ECPA. See also *Lineberry v. AddShopper, Inc*. (N.D. Cal. Feb. 19, 2025) 2025 WL 551864, at *3 (holding that data revealing the products a user viewed constitutes "contents" under CIPA). For the same reasons, the information collected in this case also constitute "contents" of a communication because it is not simply

functioning like an address as in *Zynga*, and instead reveals information about the user's interests, behavior, and preferences.

*Mikulsky* is properly read as confirming that session-replay allegations can state a Section 631(a) claim where the pleaded capture plausibly includes the contents or meaning of website communications, not merely non-substantive record data. See *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225, (9th Cir. June 20, 2025). Plaintiff alleges more than passive server logs or isolated mouse movements. Defendant's Website captured content views, product views, product interests, purchase intent signals, session interactions, keyboard input, and session-replay data in the context of a beauty, fragrance, skincare, haircare, and cosmetics website. Those allegations plausibly concern the substance, purport, or meaning of Plaintiff's communications.

This is not isolated, non-sensitive server logging. Ulta operates a beauty, fragrance, cosmetics, skincare, haircare, and beauty-tools retailer. Compl. ¶ 67. Product interest and purchase intent data there can reveal personal care concerns, fragrance preferences, skin/scalp interests, beauty routines, gift intentions, gender expression, location, and biometric related inferences. Ulta's policy admits collection of skin and scalp condition, products considered, facial geometry for Virtual Beauty Try-On, geolocation, internet activity, and inferences. The reasonable inference is substantive capture and transmission of Plaintiff's personal-care interactions.

Plaintiff need not identify every typed query, product, page, keystroke, URL, field, or payload before discovery. He alleges that he visited Ulta's Website to browse Mother's Day gifts and that the challenged trackers were present on product pages. The code embedded on the Website caused the trackers to install on Plaintiff's browser and collect both identifying information and website activity revealing his communications. Ulta then disclosed the data to third parties for analytics, advertising, profiling, and related commercial uses. Compl. ¶¶ 92–99. The precise packet captures, HAR files, browser-console logs, vendor contracts, tag-manager configurations, and server side payload records are uniquely in Ulta's and its vendors' possession. Rule 8 requires plausibility, not pre-discovery forensic reconstruction.

**2. The Complaint plausibly alleges contemporaneous interception.**

Ulta's post-receipt theory is a factual inference drawn against Plaintiff. The Complaint alleges browser side interception: Ulta embedded third-party scripts and tracking code into the Website; that code was caused to execute in users' browsers during browsing sessions; and the code collected and transmitted website communications and activity to third parties in real time. Compl. ¶¶ 46–50, 68–73, 76–79, 93–99. When embedded third-party code executes in a user's browser, the browser itself may be instructed to send requests and payloads directly to vendor endpoints while the user is interacting with the website. That alleged browser to vendor transmission is not after the fact export from Ulta's database—it is acquisition during the communication. Courts have treated materially similar browser side allegations as sufficient at the pleading stage. See *Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *7–8 (N.D. Cal. Jan. 27, 2026); *Selby*, 2025 WL 2950164, at *3.

At minimum, whether the challenged transmissions were direct browser to vendor transmissions, simultaneous transmissions, tag manager routed transmissions, relays, or post-receipt reports is a technical factual question. The Court must accept the plausible allegation that third parties acquired Plaintiff's communications while they were being sent to and received from Ulta's Website, not Ulta's competing "post-receipt" characterization.

**3. The Complaint plausibly alleges third-party interception and aiding-and-abetting liability.**

Ulta's "software provider" argument asks the Court to resolve disputed facts about vendor function, control, contracts, data rights, data use, and commercial benefit. The Complaint alleges Ulta embedded trackers developed and operated by Meta, Google, Tealium, Akamai, Quantum Metric, Medallia, Pinterest, Microsoft, The Trade Desk, TikTok, Criteo, Snapchat, OpenX, PubMatic, and Rubicon. Those third parties collected, transmitted, processed, and used correlated user information for targeted advertising, marketing, analytics, and other commercial purposes, and Ulta actively shared the data by deploying their tools. Compl. ¶¶ 2, 46, 62–64, 68–73, 93–99.

These allegations plausibly plead independent third-party interception. Courts reject any categorical rule that embedded vendors are always extensions of the website operator. *Smith v. Rack*

*Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025); *Ambriz v. Google, LLC*, 2025 WL 830450, at *2–3 (N.D. Cal. Feb. 10, 2025); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072–76 (N.D. Cal. 2023). The inquiry is factual: whether the vendor merely provides a tool or has the capability, right, or incentive to use intercepted communications for itself.

Plaintiff alleges the latter. Meta/Facebook, Google/DoubleClick, Pinterest, Microsoft, TikTok, The Trade Desk, Criteo, OpenX, PubMatic, and Rubicon are alleged ad-tech and analytics participants in cross site profiling, retargeting, audience building, conversion measurement, and ad monetization—not passive internal tools. Ulta's policy admits online and persistent identifiers may go to advertising, analytics, and marketing partners and may be a "sale" or "sharing," supporting the inference that these third party vendors receive and use the data.

The Complaint also pleads aiding and abetting. Ulta owned and controlled the Website, incorporated the trackers into its code, caused them to install on Plaintiff's browser, and used them to collect and transmit Plaintiff's website communications and identifiers. Compl. ¶¶ 67–73, 93–99. Intent and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). Intentional deployment of vendor code for advertising, analytics, session replay, fingerprinting, and cross site tracking supports knowing assistance.

**4. Plaintiff sufficiently pleads Defendant's failure to obtain consent or a court order prior to the interception and disclosure of the communications.**

Defendant asks the Court to take judicial notice of Ulta's privacy policy to support its argument that users consented to the interception. However, Ulta's privacy policy cannot establish consent at this stage. CIPA requires all-party consent. *Javier*, 2022 WL 1744107, at *1–2. Plaintiff alleges he gave no prior consent to install or use the trackers and that Ulta also failed to obtain a court order prior to the interception and disclosure of the communications through the trackers. Compl. ¶¶ 95–100, 122–123. More specifically, it requires "the *prior* consent of all parties to a communication." *Id.* at *2 (emphasis added). In other words, consent cannot be established retroactively. Here, the Complaint specifically alleges that "Defendant programmed the Trackers to deploy immediately upon a user landing on the Website and does not provide any mechanism for a

user to opt-out or provide consent before the Trackers are activated." Compl. ¶ 73. These allegations are sufficient to establish that Defendant failed to obtain ***prior*** consent.

Moreover, actual notice, conspicuousness, timing, specificity, manifestation of assent, and whether any assent extended to third-party interception and vendor use are all factual questions. *Berman*, 30 F.4th at 856–59; *Nguyen*, 763 F.3d at 1178–79. Broad, conditional terms—"may" collect, "may" share, "from time to time" use session replay, "may" disclose to categories—do not prove consent to the specific ecosystem alleged and identified in the Complaint. Generic disclosure of "cookies," "pixels," "analytics," or "session replay" also is not consent to the specific conduct alleged: pre-consent firing, third-party interception, keylogging, fingerprinting, persistent identifiers, cross-site advertising use, sale or sharing of personal information, and vendor use for independent commercial purposes.

Online consent requires reasonably conspicuous notice and an unambiguous act manifesting assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–59 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–65 (2016). The Complaint alleges the opposite: Ulta installed and used trackers when Plaintiff visited the Website, without prior consent or a court order. Compl. ¶¶ 72–73, 95–100, 122–123. A hyperlinked or externally posted policy cannot establish assent as a matter of law, especially where interception is alleged to have occurred automatically before a user could choose to consent or decline the tracking. Ulta's request for judicial notice does not establish when scripts fired, what notice appeared beforehand, whether Plaintiff saw it, whether any control required affirmative consent before the trackers began collecting data, or whether any disclosure identified the specific third-party interception and vendor self-use alleged here.

Nor do generic references to cookies, pixels, analytics, or session replay prove consent to hundreds of third-party trackers, dozens of cookies, canvas fingerprinting, keylogging, Quantum Metric and Medallia session recording, Meta/Facebook Pixel events, Google/DoubleClick transmissions, Tealium tag orchestration, Akamai fingerprinting, and cross-site ad profiling by vendors for their own commercial purposes. At most, the policy supports Plaintiff by admitting

collection of usage/device data, persistent identifiers, IP addresses, browsing activity, products viewed, session-replay data, third-party pixels/tracking technologies, health, commercial, biometric, geolocation, and inference data; disclosures to advertising, analytics, marketing, and service partners; and the "sale" and "sharing" of personal information through third-party tools.

Ulta's Privacy Policy may be considered, if at all, only for its existence and contents—not for the truth of Ulta's assertions or the disputed proposition that Plaintiff saw, understood, assented to, or received it before the challenged trackers fired. A court may notice that a webpage or document exists but may not accept disputed factual assertions as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Nor may Ulta use incorporation by reference to replace the Complaint with its preferred factual narrative. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018).

**B. Plaintiff Plausibly States a CIPA Section 638.51(a) Pen Register Claim.**

**1. Plaintiff alleges devices and processes that recorded routing, addressing, and signaling information.**

CIPA Section 638.51(a) prohibits installation or use of a pen register or trap and trace device without a court order. Penal Code section 638.50(b) defines a pen register as a "device or process" that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, excluding contents.

Plaintiff plausibly alleges "devices" or "processes" by alleging the dozens of scripts, code, and software on the Website that identifies consumers, gathers data, and correlates that data. Compl. ¶¶ 80–89. See *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); see also *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023). The Complaint alleges collection of IP addresses, device fingerprints, unique identifiers, browser information, and other routing, addressing, or signaling information, without prior consent or court order. Compl. ¶¶ 23–40, 64, 80–89, 95–100, 120–123.

Ulta argues that Plaintiff failed to identify a device or process, but the Complaint identifies the tracker stack and vendor components: cookies, pixels, canvas fingerprinting, Google Tag

Manager, Meta/Facebook Pixel, Google Ads/DoubleClick, Tealium, Akamai, Quantum Metric, Medallia, Pinterest, Microsoft, TikTok, Criteo, OpenX, PubMatic, Rubicon, and other ad networks. Compl. ¶¶ 2, 46–64, 86–89.

Moreover, there is nothing contradictory about Plaintiff pleading that the Defendant collected and disclosed both content and non-content related data because both types of trackers were present on the Website. TheComplaint alleges that "forensic testing confirmed that the Website deployed 201 third-party trackers, including 73 cookies, 25 different canvas fingerprints, and 2 session recorders." Compl. ¶ 47. The session recorders capture contents by "captur[ing] a user's entire session visually, recording a user's cursor movements and clicks and tracking their page scrolling behavior." Compl. ¶ 49. At the same time, the 25 canvas fingerprints on the Website record and decode addressing information by extracting data to create a "highly unique and persistent identifier that can track users across sessions and websites." Compl. ¶ 64. In other words, certain components intercepted contents while others recorded routing, addressing, or signaling information. Defendant fails to explain why both types of technology cannot exist simultaneously on the Website.

**2. Section 638.51 is not categorically limited to telephone technology.**

Ulta asks the Court to limit Section 638.51 to telephones. The text forecloses that limit: it covers "wire or electronic communication" and any "device or process." Cal. Penal Code § 638.50(b). Courts recognize CIPA's application to new technologies, and *Greenley*, *James*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024), *Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026), and *Nelson v. Reddit, Inc.*, 2026 WL 445627 (S.D. Cal. Feb. 17, 2026), show that website based pen register theories are at least plausible. Ulta's contrary California trial court decisions are nonbinding, and the split underscores why Rule 12(c) judgment is inappropriate.

**3. Plaintiff sufficiently alleges the requisite intent.**

Courts repeatedly recognize that a third party becomes an unauthorized interceptor when a website embeds tracking technology that captures user communications in real time and permits the third party to use the intercepted communications for its owner commercial purposes. See *Smith v.*

*Rack Room Shoes, Inc.*, 2025 WL 1085169 at *4 (N.D. Cal. Apr. 4, 2025)(rejecting the argument that the trackers were not unauthorized third parties but "extensions" of the website); Ambriz v. Google, LLC, 2025 WL 830450 (third party trackers who have the capability to use the information transmitted are unauthorized parties regardless of their intent).

**C. Plaintiff Plausibly States a Federal Wiretap Act Claim.**

Ulta's Wiretap Act arguments duplicate its CIPA arguments and fail. Plaintiff plausibly alleges interception of contents because the Act defines "contents" to include information concerning the substance, purport, or meaning of a communication, 18 U.S.C. § 2510(8), and Plaintiff alleges Ulta's trackers captured and transmitted session interactions, product views, content views, browsing behavior, cursor movements, clicks, scrolling, keyboard input, and purchase intent signals. Compl. ¶¶ 46–64, 78–79, 90–99, 130–136. As outlined above, in context, those data reveal the substance and meaning of Plaintiff's website communications with a beauty retailer.

Plaintiff also plausibly alleges contemporaneous and third-party interception. The Complaint alleges real time capture and transmission through code embedded in Ulta's Website and installed on Plaintiff's browser. Compl. ¶¶ 46–50, 68–73, 76–79, 93–99, 132–134. The Complaint further identifies vendors and ad networks that developed, operated, collected, transmitted, processed, and used the tracker data. Compl. ¶¶ 2, 46–64, 68–73. Ulta's post-receipt theory fails.

Moreover, the statute does not immunize an interception made for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). Plaintiff alleges more than the interception itself: Ulta intentionally disclosed and commercially used identifiable browsing, product-interest, purchase-intent, device, and session-interaction communications for targeted advertising, profiling, marketing, revenue generation, and sale/share without legally effective consent. Compl. ¶¶ 71, 91, 94, 133–135, 155, 171–173. That alleged purpose is independently tortious because it invades privacy and uses Plaintiff's communications in a manner beyond ordinary website operation. The court allowed a comparable crime tort theory where the defendant allegedly used intercepted communications for targeted advertising contrary to privacy representations. *Smith II*, 2025 WL

2210002, at *4–5. Purpose, vendor self-use, scope of consent, and whether the objective was tortious are factual questions inappropriate for resolution on a Rule 12(c) motion.

**D. Plaintiff Plausibly States a CDAFA Claim.**

Ulta's CDAFA arguments—damage or loss, permission, and technical circumvention—ask the Court to resolve contested facts and apply an unduly narrow statute. CDAFA prohibits knowingly accessing and, without permission, using, taking, copying, altering, damaging, or providing a means of access to data, computers, computer systems, or networks. Cal. Penal Code § 502(c). "Access" broadly includes gaining entry to, instructing, causing input to, causing output from, causing data processing with, or communicating with logical, arithmetical, or memory function resources. Cal. Penal Code § 502(b)(1).

The Complaint alleges Ulta knowingly and without permission installed and stored third-party tracking technology on Plaintiff's browser, added and altered data and software, caused trackers to access Plaintiff's computer and browser, caused output and processing, took and used IP addresses and identifiers, and shared the data with third parties for profit. Compl. ¶¶ 137–157. Permission to visit a website is not permission to install undisclosed tracking code, create persistent identifiers, run canvas fingerprinting, deploy keylogging event listeners, conduct session recording, place local-storage and session-storage items, and transmit private activity to ad-tech vendors for cross-site profiling. Consent and permission are factual issues.

CDAFA is not limited to password hacking. Courts allow claims based on mobile applications, cookies, browser data, and unauthorized tracking where defendants allegedly accessed, copied, used, or transmitted data without permission. See *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54 (N.D. Cal. 2014); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 607–08 (9th Cir. 2020). Plaintiff alleges covert code execution and tracking that bypassed user understanding and consent.

Plaintiff also pleads damage or loss. The Complaint alleges Ulta took and used Plaintiff's personal information and computer resources for profit, unjustly enriched itself, and caused loss of control and value in personal data. Compl. ¶¶ 153–156, 171–173. The Ninth Circuit recognizes that

personal information can have economic value and unauthorized tracking can support injury. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 600–01. The amount of loss, value of data, device-resource burden, remediation cost, and Ulta's benefit are merits issues; the pleading suffices.

**E. Plaintiff Plausibly States a California Constitutional Privacy and Intrusion Claim.**

Ulta minimizes the Complaint as "ordinary retail browsing," but Plaintiff alleges covert collection and disclosure of personally identifying, non-anonymized information and website activity through a broad tracking system. Compl. ¶¶ 90–99, 161–165. That implicates a legally protected privacy interest, a reasonable expectation of privacy, and a highly offensive intrusion.

**1. Plaintiff alleges a legally protected privacy interest.**

California recognizes privacy interests in personal information, online browsing activity, and control over dissemination of personal data. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994); *In re Facebook Internet Tracking Litig.*, 956 F.3d at 601–03. Plaintiff alleges collection and disclosure of identifying information, IP addresses, geolocation derived information, device fingerprints, browsing activity, product interests, purchase intent signals, session interactions, and website behavior. Compl. ¶¶ 23–40, 46–64, 90–99, 161–165. Ulta's policy confirms sensitivity: health information, skin/scalp condition, browsing and search history, commercial information, products considered, geolocation, biometric/facial geometry data, audio/visual information, inferences, persistent identifiers, IP addresses, usage information, and session replay. These are consumer-profile data, not meaningless logs.

**2. Plaintiff alleges a reasonable expectation of privacy.**

A consumer may expect Ulta to process what is necessary to display a page or complete a transaction; a consumer does not reasonably expect invisible third-party trackers, dual session recorders, keylogging listeners, canvas fingerprinting, Meta/Facebook Pixel transmissions, Google/DoubleClick ad profiling, and persistent identifiers to monitor and disclose activity before meaningful notice and consent. Ulta's policy does not defeat that expectation because judicial notice does not establish actual notice, assent, timing, conspicuousness, prior consent, or legal effect. A generic policy does not eliminate privacy expectations as a matter of law; the inquiry is contextual, including the number and types of trackers, beauty/fragrance browsing, third-party ad-tech vendors,

and lack of prior consent. Nor must Plaintiff plead every page, product, field, or search term; the pleaded invasion is covert tracking and disclosure of identified website activity through a multi-vendor architecture, with payload details reserved for discovery or curable by amendment.

**3. Plaintiff alleges a serious and highly offensive intrusion.**

Ulta says the intrusion is not highly offensive because the Website is publicly accessible. That is not the test: public accessibility does not authorize secret recording, keylogging, fingerprinting, and third-party disclosure. The intrusion is serious in nature, scope, and impact. Ulta allegedly deployed 201 third-party trackers, 73 cookies, 25 canvas fingerprinting instances, two session recorders, and two keylogging instances on the fragrance page, with similar technology on the homepage. Session recording can capture cursor movements, clicks, scrolling, form inputs, and deleted text; keylogging can capture keystrokes; canvas fingerprinting can create persistent identifiers; and pixels/ad-tech scripts can transmit page views, product interests, device/browser data, IP addresses, and purchase intent signals for cross-site profiling. On a beauty, skincare, fragrance, and haircare site, that can reveal intimate preferences and health-adjacent concerns.

Whether this conduct is "highly offensive" is ordinarily a question of fact. The Court should not decide at Rule 12(c) that simultaneous session replay, keylogging, fingerprinting, and cross site ad profiling of beauty related browsing is socially acceptable as a matter of law. *Popa* is not this case. *Popa* addressed Article III standing arising from Microsoft Clarity session replay on a pet supply website, where the plaintiff identified no embarrassing, invasive, or otherwise private information and the Ninth Circuit analogized the alleged monitoring to a store clerk observing shoppers. *Popa*, 153 F.4th at 791–92. The Ninth Circuit expressly recognized that tracking software could be offensive in circumstances involving sensitive medical or financial information. *Id*. at 792. Here, Plaintiff alleges a broader and more invasive surveillance scheme—third-party ad-tech, persistent identifiers, canvas fingerprinting, keylogging, session replay, Meta/Facebook Pixel events, Google/DoubleClick transmissions, and sale/share—on a beauty, skincare, fragrance, haircare, and personal-care website. That tracks the persistent, identifiable, profile building

allegations that courts have distinguished from *Popa*. See *Selby*, 2025 WL 2950164, at *3; *Semien*, 2026 WL 216333, at *4.

**F. Plaintiff Plausibly States a UCL Claim.**

**1. Plaintiff pleads economic injury and loss of property.**

Ulta says Plaintiff lacks UCL standing because he did not allege a purchase. A purchase is unnecessary. The UCL requires loss of money or property caused by unfair competition. Cal. Bus. & Prof. Code § 17204. Plaintiff alleges loss of a protected privacy interest in personal information, data, and communications; that Ulta treated the information as its own property; and that Ulta sold and/or used it for profit. Compl. ¶¶ 171–173. Personal information can have economic value. *In re Facebook Internet Tracking Litig.*, 956 F.3d at 600–01; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323–24 (2011). Ulta's policy confirms economic significance by stating that persistent and online identifiers go to advertising, analytics, and marketing partners and may be a "sale" or "sharing." Plaintiff's property interest is not an abstract privacy interest: Ulta allegedly appropriated identifiable browsing, product interest, purchase intent, device, and persistent identifier data; treated that data as a monetizable asset; sold/shared it through ad-tech systems; and deprived Plaintiff of the ability to control, withhold, or exchange that data on his own terms.

**2. The unlawful prong survives because the predicate claims survive.**

Ulta's derivative-failure argument fails because the predicate CIPA, Wiretap Act, CDAFA, and California Constitution claims are adequately pleaded. Compl. ¶ 169. Where predicate violations survive, so does the UCL unlawful prong.

**3. The unfair and fraudulent prongs are independently pleaded.**

Plaintiff also pleads unfair and fraudulent practices. Ulta allegedly deployed third-party tracking, session replay, keylogging, fingerprinting, and ad-tech sharing without prior consent or adequate notice. Compl. ¶¶ 46–64, 72–73, 90–99, 161–173. That conduct is immoral, unethical, oppressive, unscrupulous, substantially injurious, and contrary to policies embodied in CIPA, CDAFA, the Wiretap Act, and California privacy law. Compl. ¶ 170. Omissions about scope, timing,

vendor access, third-party use, sale/share, and pre-consent tracker firing would likely deceive a reasonable consumer.

#### 4. *Sonner* does not bar Plaintiff's UCL claim.

Ulta's *Sonner* argument fails. Prospective relief is needed to stop future interception, disclosure, sale/share, and privacy violations; damages would not disable trackers, prevent future transmissions, require identifier deletion, reform consent flow, stop sale/share, or restore future control. Legal and equitable remedies may be pleaded in the alternative. Fed. R. Civ. P. 8(d).

## IV. LEAVE TO AMEND SHOULD BE GRANTED IF ANY CLAIM IS FOUND DEFICIENT

Dismissal with prejudice would be improper; leave should be freely granted unless amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). If any allegation is insufficiently specific, amendment is not futile. Plaintiff can amend to plead additional facts concerning the website technologies at issue, including trackers, cookies, pixels, fingerprinting technologies, session-recording tools, input/keypress listeners, IP collection, unique IDs, device and browser data, local and session storage, and third-party analytics, advertising, and recording vendors. Plaintiff can also plead Plaintiff-specific pages and products viewed, searches conducted, browser environment, lack of pre-tracking consent, and the privacy significance of beauty, fragrance, skincare, haircare, purchase-intent, biometric-related, and health-adjacent data.

## V. CONCLUSION

Plaintiff respectfully requests denial of Ulta's Motion or, alternatively, leave to amend.

Dated: June 5, 2026

**POTTER HANDY, LLP**

By: /s/ James M. Treglio

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff