EILEEN R. RIDLEY, Bar No. 151735
eridley@foley.com
**FOLEY & LARDNER LLP**
ONE MARKET PLAZA
55 SPEAR STREET TOWER, SUITE 1900
SAN FRANCISCO, CA 94105
TELEPHONE: 415.434.4484
FACSIMILE: 415.434.4507

PETER Z. STOCKBURGER, Bar No. 265750
peter.stockburger@foley.com
ANUM AMIN, Bar No. 319662
aamin@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130
TELEPHONE: 858.847.6700
FACSIMILE: 858.792.6773

Attorneys for Defendant
ULTA SALON, COSMETICS & FRAGRANCE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARNY ASERCION, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ULTA SALON, COSMETICS & FRAGRANCE, a Delaware Corporation, and Does 1-100, inclusive,

Defendant.

Case No. 3:26-cv-2442

**DEFENDANT ULTA SALON, COSMETICS & FRAGRANCE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Assigned to: Hon. Rita F. Lin

Case filed: January 29, 2026
Removal filed: March 20, 2026

Hearing date: July 14, 2026
Time: 10:00 a.m.

## I. INTRODUCTION

Plaintiff's Opposition confirms the central defect in the Complaint. This case is not about anything Plaintiff actually alleges happened to him but what he assumes website "trackers" can potentially do in the abstract. The Complaint only alleges that Plaintiff visited Ulta's website in May 2025 "to browse for Mother's Day gifts." Compl. ¶ 92. It does not allege that Plaintiff logged into an account, entered payment information, typed into a search bar or form, transmitted health information, used any virtual try-on feature, disclosed skin or hair information, or even what pages or products he personally viewed. *Id.* ¶¶ 92-97. Instead, it relies on generalized assertions about a "detailed tracking architecture," "201 third-party trackers," and what such tools might reveal about unidentified users in other circumstances. Opp. 1, 3-5, 12-14. But the Complaint does not allege that any such information was collected from Plaintiff during his single visit. Plaintiff's faulty pleading cannot be saved by asking the Court to infer that sensitive information had been communicated—indeed, the need for an inference establishes the pleading's deficiency such that this Motion should be granted.

## II. ARGUMENTS

### A. Plaintiff Fails to State a Claim Under CIPA Section 631(a)

The Complaint fails on its face to state a viable Section 631(a) claim. To plead interception of "contents" under CIPA, a plaintiff must allege that a third party learned the "substance, purport, or meaning" of a specific communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105 (9th Cir. 2014). The only plaintiff-specific allegation here is that Plaintiff "visited the website in May 2025 to browse for Mother's Day gifts." Compl. ¶ 92. Critically absent is any allegation of what content (if any) was captured from Plaintiff, what pages he viewed, what products he considered, what he typed, what data the trackers collected from his session, or what "communications" were intercepted. *Id.* ¶¶ 92–97. Section 631(a) requires particularized allegations of intercepted content, not bare assertions that trackers were present during a website visit.

Plaintiff's Opposition mischaracterizes the Complaint. The Opposition asserts that "[t]he Complaint outlines . . . data captured by the trackers on the Website, including URLs, page views, content views, product views, product interests, purchase-intent signals, browsing patterns, cursor

movements, clicks, scrolling, keyboard input, and complete session-replay information." Opp. 3. But the cited paragraphs describe what tracking technologies are capable of capturing from generic "users"—not what was actually captured from Plaintiff. These are descriptions of technology capabilities pled on information and belief about unidentified users. The Complaint never bridges the gap between what the trackers can do in the abstract and what they actually did to Plaintiff during his single visit.

Plaintiff argues that because Ulta is a beauty retailer, "[t]he reasonable inference is substantive capture and transmission of Plaintiff's personal-care interactions." Opp. 4. That is not a reasonable inference—it is an unsupported assumption. Plaintiff's argument requires the Court to conclude that because Ulta sells beauty products, the Website contains trackers, and Plaintiff visited the Website, trackers must have captured substantive personal-care information revealing Plaintiff's alleged communications. But the Complaint does not allege that Plaintiff browsed any particular product category, viewed skincare or haircare pages, used any virtual try-on feature, or interacted with the Website in any manner that would generate communications with cognizable "contents" under Section 631(a), as opposed to routine technical data incident to loading a webpage.

Plaintiff's reliance on *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022), and *Lineberry v. AddShopper, Inc.*, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025), does not compel a different result. Those cases involved allegations that the challenged technology captured specific product views, button clicks, health-related information, search terms, or other context-specific substantive communications from the plaintiff. Similarly, in *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) ("*Selby*"), and *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) ("*Smith*"), the complaints alleged plaintiff-specific facts about what was transmitted—full URLs, search queries, item-level activity, identifiers, and event data. This Complaint contains no comparable allegations.

The Complaint also fails to plead contemporaneous interception. Section 631(a) requires that a third party acquire the contents of a communication "while the same is in transit." Cal. Penal Code § 631(a); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The Complaint does not allege facts showing that any third party acquired Plaintiff's communication during

transmission, before or apart from Ulta's own receipt. It does not identify what communication was intercepted, which vendor endpoint received it, what transmission path was used, or when any alleged acquisition occurred relative to Ulta's receipt. The Opposition's labels—"browser-side interception" and "real time" transmissions (Opp. 5)—are legal conclusions that restate the statutory element, not factual allegations that satisfy it. The Opposition cites *Semien v. PubMatic Inc.*, 2026 WL 216333, at *7–8 (N.D. Cal. Jan. 27, 2026) ("*Semien*"), and *Selby*, 2025 WL 2950164, at *3, for the proposition that browser-side allegations are sufficient at the pleading stage. But those complaints alleged specific browser-to-vendor transmissions of identified data from the plaintiff's session—the very factual specificity absent here. Compl. ¶¶ 92–97.

Plaintiff's aiding-and-abetting theory fails for the same reason. To state a claim under the fourth clause of Section 631(a), Plaintiff must first establish a predicate violation by a third party. The Complaint does not identify what any individual vendor allegedly obtained from Plaintiff, what content any vendor intercepted, or how any vendor used Plaintiff's communications for its own independent purposes. Compl. ¶¶ 46–64, 92–99. Without a plausible predicate violation, Plaintiff's theory that Ulta aided and abetted unlawful interception necessarily fails.

**B. Plaintiff Fails to State a Claim Under CIPA Section 638.51(a)**

Plaintiff's claim under Section 638.51(a) fails because the Complaint does not plausibly allege use of a pen register. A "pen register" is defined as a "device or process that records or decodes dialing, routing, addressing, or signaling information," excluding contents. Cal. Penal Code § 638.50(b). The Complaint does not identify which specific tool recorded what statutory information from Plaintiff's own communication during his May 2025 visit. Plaintiff alleges only that he browsed for Mother's Day gifts. Compl. ¶ 92. The Complaint does not allege what outgoing communication Plaintiff transmitted, what routing or addressing information was recorded from that communication, or which tracker performed the recording. *Id.* ¶¶ 92–97, 120–123. Broad allegations that the Website deployed "201 third-party trackers," "73 cookies," "25 different canvas fingerprints," and "2 session recorders" (*id.* ¶ 47) do not plead a Section 638.51 claim as to Plaintiff. *See*, *e.g.*, *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 937 (N.D. Cal. 2026).

///

Plaintiff argues that there is no contradiction in pleading both content interception and pen-register collection because different tools allegedly captured different categories of information. Opp. 9. Even assuming alternative theories may be pleaded under Rule 8(d), Plaintiff still must allege facts tying each theory to his own communications. The Complaint does not allege which tools captured content from Plaintiff and which tools captured only routing, addressing, or signaling information from Plaintiff. Compl. ¶¶ 92–97, 120–123.

### C. Plaintiff Does Not Plausibly Allege Cognizable Injury, Scienter, Or Lack of Consent Under CIPA

The CIPA claims independently fail because the Complaint does not plausibly allege cognizable injury. The Complaint fails to allege what private information was actually collected from Plaintiff. It does not allege that Plaintiff disclosed sensitive personal information, payment information, health information, biometric information, or any particular product interest. Compl. ¶¶ 92–97. The alleged collection of generic browsing and technical data from an ordinary website visit does not plausibly establish the privacy injury Plaintiff asserts. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852–53 (N.D. Cal. 2025).

Similarly, the Complaint does not allege the requisite scienter under CIPA. Knowingly using website tools for analytics, advertising, session replay, or website functionality is not the same as knowingly assisting unlawful wiretapping or intentionally installing an unlawful pen register. The Complaint alleges no facts showing that Ulta knew any third party would violate CIPA, intended that result, or deployed any tool for the purpose of unlawful interception. Compl. ¶¶ 46–64, 68–73, 92–99; *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024)

Finally, Ulta does not need the Privacy Policy to carry this Motion. The Complaint fails to plead the substantive elements of its CIPA claims regardless. But the Complaint's lack-of-consent allegations are independently insufficient. The Complaint's sole allegation on the issue is a conclusory assertion about the Website in the abstract: "Defendant programmed the Trackers to deploy immediately upon a user landing on the Website and does not provide any mechanism for

a user to opt-out or provide consent before the Trackers are activated." Compl. ¶ 73. The Complaint does not allege what consent interface, if any, appeared when Plaintiff visited the Website, whether a cookie banner or privacy notice was presented, whether Plaintiff interacted with or dismissed any such mechanism, or what specific tracker allegedly fired before any opportunity for consent. *Id.* ¶¶ 92–99. Labels about what trackers do "immediately" for generic "users" do not substitute for factual allegations showing Plaintiff's actual experience.

Plaintiff argues that Ulta's Privacy Policy cannot establish consent at the pleading stage. Opp. 6–8. Ulta does not contend that the Policy conclusively proves consent as a matter of law. But the Policy, which this Court may consider on a Rule 12(c) motion, is relevant to plausibility. The Privacy Policy expressly discloses that the Website uses cookies, pixels, third-party analytics providers, session-replay technology, advertising networks, and persistent identifiers, and that Ulta may "sell" or "share" personal information through third-party tools. Ridley Decl., Ex. A. Against such disclosures, Plaintiff's conclusory allegation that trackers deployed without "any mechanism" for consent is implausible on its face. Plaintiff does not allege that the Privacy Policy was unavailable, hidden, or that he was denied an opportunity to review it before engaging with the Website. At minimum, the existence and specificity of these disclosures undercut the plausibility of Plaintiff's narrative that Ulta provided no notice whatsoever of its tracking practices.

### D. Plaintiff Fails to State a Federal Wiretap Act Claim

Plaintiff's Wiretap Act claim fails for the same reasons as his Section 631(a) theory and for the additional reason that Ulta, as a party to the alleged website communications, supplied one-party consent. 18 U.S.C. § 2511(2)(d). The Complaint does not allege that any substantive communications were captured from Plaintiff. Compl. ¶ 92. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106–09; *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018). Nor does the Complaint plausibly allege contemporaneous interception by an independent third party. Plaintiff lists vendors and ad networks but does not identify which vendor intercepted which communication from Plaintiff, when, or how. Compl. ¶¶ 46–64, 92–99, 132–135. Such allegations are insufficient to state a viable Wiretap Act claim. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002–03 (N.D. Cal. 2024); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25,

2022); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).

Plaintiff invokes the criminal-or-tortious-purpose exception to the one-party consent rule, arguing that Ulta used intercepted communications for targeted advertising, profiling, marketing, and sale or sharing. Opp. 10–11. That argument fails for two independent reasons. First, those are ordinary commercial purposes, not an independent criminal or tortious purpose separate from the alleged interception itself. Second, Plaintiff attempts to bootstrap the same deficient CIPA, CDAFA, and privacy theories into the exception. If those predicate theories fail, they cannot supply the independent unlawful purpose needed to defeat one-party consent.

Plaintiff's reliance on *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ("*Smith II*"), is misplaced. In *Smith II*, the court found the crime-tort exception satisfied because the complaint alleged that Rack Room's privacy policy affirmatively promised not to collect or use personally identifiable browsing data, and Rack Room then collected and used that data through third-party code in direct contradiction of those commitments. *Id.* at *5. The independent tortious purpose—i.e. collection or use of personally identifiable data—arose from the discrepancy between what the policy promised and what the defendant actually did. Here, the situation is the opposite. There is no alleged collection of personally identifiable data in the Complaint. Moreover, Ulta's Privacy Policy expressly discloses that the Website uses certain cookies and technologies for ordinary business purposes such as analytics, advertising, and campaign measurement. Ridley Decl., Ex. A. The Complaint does not allege that Ulta acted contrary to its own disclosures and, thus, there could be no misrepresentation or independent tortious purpose that *Smith II* required.

### E. Plaintiff Fails to State a CDAFA Claim

CDAFA requires allegations of unauthorized access, statutory damage or loss, and a concrete injury to the plaintiff's computer, data, or network. The Complaint alleges none of these. Plaintiff voluntarily visited Ulta's public Website. Compl. ¶ 92. The Complaint does not allege that Ulta bypassed a password gate, circumvented any technical restriction, accessed a restricted area of Plaintiff's device, defeated security settings, or caused Plaintiff's device to malfunction. *Id.* ¶¶ 92–97, 150–156. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053–54 (N.D. Cal. 2014); *In*

*re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011). Nor does Plaintiff allege that any data was corrupted, deleted, impaired, or rendered unavailable, or that Plaintiff incurred any remediation cost. *Id.* ¶¶ 150–156. The Complaint only alleges that tracking tools operated during a website visit and collected generalized categories of browsing data. Such allegations are not sufficient to plead a viable claim under CDAFA. *Gonzales*, 305 F. Supp. 3d at 1086.

### F. Plaintiff Fails to State a California Constitutional Privacy Or Intrusion Claim

To state a California constitutional privacy claim, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an intrusion so serious as to constitute an egregious breach of social norms. The Complaint fails on all three elements. The Complaint does not allege that Plaintiff revealed any sensitive information during his visit. It alleges only that Plaintiff browsed for Mother's Day gifts. Compl. ¶ 92. The Complaint does not identify what pages Plaintiff visited, what products he viewed, what search terms he entered, whether he logged in, or whether he disclosed skin, hair, health, payment, biometric, or personal-care information. *Id.* ¶¶ 92–97. Plaintiff cannot establish a protected privacy interest by relying on what Ulta's Website might reveal about other users in other contexts. Plaintiff's argument that tracking on a beauty website "can reveal" personal-care concerns, fragrance preferences, or gender expression (Opp. 12–14) is a speculative inference at best as the Complaint does not allege that Plaintiff conveyed any such information.

Plaintiff's alleged expectation of privacy is further undermined by Ulta's Privacy Policy, which disclosed cookies, pixels, third-party analytics, session replay, device data, advertising partners, and online identifiers. Ridley Decl., Ex. A. Plaintiff alleges no facts showing transmittal of Plaintiff's confidential information, or that Plaintiff used the Website in a context carrying heightened privacy expectations. Compl. ¶¶ 92–97.

Plaintiff's reliance on *Selby* and *Semien* is misplaced. In *Selby*, the complaint alleged that defendant compiled detailed profiles by tracking the plaintiffs' interactions across many websites, including websites where they disclosed sensitive data, tied to email addresses and personal identifiers. 2025 WL 2950164, at *3. The complaint included screenshots of the source code and specific full-string URLs reflecting search queries and items viewed. *Id.* In *Semien*, each named

plaintiff identified the specific website visited, the specific data captured, and alleged that the defendant compiled that data into detailed advertising profiles sold to third parties, including sensitive segments such as health status, credit risk, income, and political affiliation. 2026 WL 216333, at *2–4. This Complaint contains no comparable allegations. Compl. ¶¶ 92–97. Although the Complaint describes what session-replay tools, keyloggers, and other technologies may be capable of capturing in other circumstances, it never alleges that any sensitive or embarrassing information was actually captured from Plaintiff. At most, the Complaint alleges observation of ordinary retail browsing behavior, which is fundamentally different from the cross-site profile-building and sensitive-data capture that supported the claims in *Selby* and *Semien*.

### G. Plaintiff Fails to State a UCL Claim

Plaintiff's UCL claim fails for lack of standing and because each prong depends on the same deficient allegations. The UCL requires loss of money or property. The Complaint does not allege that Plaintiff purchased anything, paid money, lost money, or was deprived of identifiable property. Compl. ¶¶ 92–97, 171–173. Nor does it identify what personal information belonging to Plaintiff was sold, shared, or monetized. Plaintiff cites *In re Facebook Internet Tracking Litigation* and *Kwikset Corp. v. Superior Court* for the proposition that personal information can have economic value. Opp. 14. But *Kwikset* involved consumers who spent money on mislabeled products, and Plaintiff alleges no purchase. 51 Cal.4th 310, 331. *In re Facebook* involved materially different allegations about the value of user data. 791 F.Supp.2d at 714–15. Here, Plaintiff does not allege that she exchanged data for money, lost a market opportunity, or was deprived of any money or property. Compl. ¶¶ 92–97, 171–173.

The unlawful prong fails because the predicate CIPA, Wiretap Act, CDAFA, and privacy claims fail. Compl. ¶ 169. The unfair and fraudulent prongs likewise fail because the Complaint does not plead any independently unfair or fraudulent conduct beyond the same alleged statutory violations. The Complaint does not identify a misrepresentation Plaintiff saw, a statement Plaintiff relied on, or an omission that caused Plaintiff to lose money or property. Compl. ¶¶ 92–97, 169–173. Ulta's Privacy Policy disclosed the categories of technologies and information Plaintiff challenges. Ridley Decl., Ex. A. Finally, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844

(9th Cir. 2020), bars Plaintiff's equitable UCL relief because the Complaint does not plead that legal remedies are inadequate. Plaintiff seeks statutory damages under CIPA and the Wiretap Act and damages under CDAFA, yet does not plead facts showing why those remedies are inadequate. Compl. Prayer ¶¶ 4–8. The UCL claim should be dismissed.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Ulta's Motion, the Court should grant judgment on the pleadings as to the Complaint in its entirety.

Dated: June 12, 2026

**FOLEY & LARDNER LLP**
EILEEN R. RIDLEY
PETER Z. STOCKBURGER
ANUM AMIN

By: *s/ Eileen R. Ridley*
EILEEN R. RIDLEY
Attorneys for Defendant ULTA SALON COSMETICS & FRAGRANCE, INC.